IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LINDA KAYE HAASIS                                                                              PLAINTIFF

v.                               Civil No. 10-2133

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                 DEFENDANT

**MEMORANDUM OPINION**

**I.      Factual and Procedural Background**

Plaintiff, Linda Kaye Haasis, appeals from the decision of the Commissioner of the Social Security Administration denying her claim for a period of disability, disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), pursuant to §§ 216(I) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 416(I) and 423(d), and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively (collectively, "the Act").  42 U.S.C. §405(g).

Plaintiff protectively filed her DIB and SSI applications on February 22, 2008, alleging a disability onset date of June 15, 2001. T. 111. Allegations included diabetes, high blood pressure, hypothyroidism, back issues and depression. T. 88. At the time of the onset date, Plaintiff was 43 years old and possessed a ninth grade education. T. 44 - 45. She had past relevant work as a home health care aid. T. 60, 79. Plaintiff's applications were denied at the initial and reconsideration levels. T. 88, 91, 98, 100. At Plaintiff's request, an administrative hearing was held in Clarksville, Arkansas, on July 8, 2009. T. 39-64. Plaintiff was present at this hearing and represented by counsel. Vocational Expert Jim Spraggins also testified. Administrative Law Judge ("ALJ") Larry Shepherd issued a decision on January 22, 2010, finding

1

that Plaintiff was not disabled within the meaning of the Act. T. 81. On July 16, 2010, the Appeals Council found no basis to reverse the ALJ's decision. T.1. Therefore, the ALJ's January 22, 2010, decision became the Commissioner's final administrative decision.

**II.    Medical History**

Plaintiff produced two pages of medical records from Cooper Clinic for the period of April 4, 2001, through July 23, 2004. T. 193-194. These records indicate she either visited the clinic or called on three occasions (April 4, 2001; June 17, 2002; July 23, 2004) for adjustments or refills of medications. During this time she was taking Atenolol (beta blocker to treat high blood pressure), Celexa (selective serotonin reuptake inhibitor to treat depression), Levothroid (replacement hormone for thyroid deficiency), Guanfacine (relaxes blood vessels to treat high blood pressure) and Terosin (alpha blocker to treat high blood pressure). *Id.* During the April 4, 2001, visit, Plaintiff had blood drawn and a thyroid panel ordered. T. 194.   Her TSH (thyroid-stimulating hormone) level was 3.30 m/IU/ML and her T4 (thyroxine–thyroid hormone) level was 0.93 NG/DL. Both results were within the reference ranges indicated for a normally functioning thyroid. The lab report has a handwritten notation that the patient was to return in two weeks for a followup, but there are no indications whether her doctor was satisfied with the results of the thyroid testing. Plaintiff made no complaints and was not examined on any of these occasions. At the time of the April 4, 2001, visit, Plaintiff weighted 236 pounds and her blood pressure was 182/108. *Id.*

Over the next four year period, up to the point at which she filed for disability, Plaintiff sought prescription refills to treat depression, diabetes, high blood pressure and hypothyroidism.  from Dr. Roxanne Marshall once a year in 2004, 2005, and 2006 and twice in 2007. T. 239-247.

In 2008, Plaintiff was referred by the Agency for mental and physical consultative examinations.

On April 23, 2008, Dr. Stephanie Frisbie diagnosed Plaintiff with chronic low back pain[1], depression, history of hypothyroidism and high blood pressure. T. 197-198. Upon physical examination, she noted no physical limitations. T. 198.

On May 1, 2008, Dr. Terry Efird diagnosed Plaintiff with major depressive disorder, severe, without psychotic features and generalized anxiety disorder and assessed a GAF score of 48-58, indicating moderate to serious mental impairment. T. 215. Dr. Efird noted that Plaintiff communicated and interacted in a socially adequate manner, had the capacity to perform basic cognitive tasks, possessed borderline to low average intellectual functioning, performed most activities of daily life autonomously and had some mild impairment in persistence and pace of performance. T. 214-216.

Subsequent to her application for benefits, Plaintiff saw Dr. Marshall once in 2008 and once in 2009. On June 3, 2008, Plaintiff first reported back pain and was diagnosed with a lumbrosacral strain. T. 239. The February 2, 2009, visit was to get her prescriptions refilled and have her glucose and thyroid levels checked. T. 279. Lab results showed that her blood sugar was high (302), her TSH was low and her T4 was within normal range. T. 282.

In July of 2008 Plaintiff underwent her third consultative exam directed by the Agency. Dr. Stephen Shry diagnosed plaintiff with major depression and assessed a GAF score of 50-61, indicating moderate mental impairment. T. 253. He noted that she may be mildly impaired in her ability to cope with the typical mental demands of basic work-like tasks, to attend to and sustain concentration on basic tasks, and to complete basic work- like tasks within acceptable time frames. *Id.* He stated that he believed her

---

[1] Plaintiff reported to Dr. Frisbie that she had had back pain for several years, but the first time she complained or sought treatment for her back was two months *after* this CE. T. 195, 239.

performance may improve with adequate psychiatric intervention. *Id.*

### III. Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the Residual

Functional Capacity ("RFC") to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

IV. Discussion

The ALJ determined that the claimant met the insured status requirements through March 30, 2005, that she had not engaged in substantial gainful activity since June 15, 2001, and that she had severe impairments of diabetes mellitus, morbid obesity, hypertension, and depression. T. 74. He also found that she had non-severe impairments of back sprain and hypothyroidism. T. 75. The ALJ found, however, that the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. T. 76. The ALJ further found that Plaintiff's allegations regarding her limitations were not fully credible, and that the Plaintiff retained the residual functional capacity to perform light, unskilled work. T. 80.

Plaintiff filed this claim contending that the ALJ: failed to properly develop the evidence, failed to consider evidence which fairly detracted from his findings, failed to apply proper legal standards, and failed to satisfy the burden of proof at the 5th step of the sequential evaluation process. Pl.'s Br. at 6, 8, 11, 16.

**Substantial Evidence Supports the ALJ's RFC Finding**

The ALJ found that the Plaintiff had the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently. She can sit for about six hours during and eight hour work day and

5

can stand and walk for about six hours during an eight hour workday. She can understand, remember, and carry out simple, routine, and repetitive tasks. She can respond appropriately to supervisors, co-workers, and usual work situations. She can have occasional contact with the general public. She can perform low stress work (defined as occasional decision-making and occasional changes in work place settings). T. 77.

A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000). The Court notes that Plaintiff appears to place the burden of proof on the Commissioner. It is the claimant, however, who bears the burden of proving her physical restrictions and/or residual functional capacity. See *Geoff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

The ALJ made an exhaustive review of Plaintiff's medical records (those provided by Plaintiff and those provided by the Commission) and determined, after recording all her complaints and resulting diagnoses, that Plaintiff was under multiple severe impairments: diabetes mellitus, morbid obesity, hypertension and depression. T. 74. It is disingenuous for Plaintiff to argue that the ALJ did not consider the effects and limitations of these conditions and their concomitant symptoms when he in fact determined that each diagnosis, separately and together, constituted impairments of some degree.

Plaintiff was apparently first diagnosed with type II diabetes on November 2, 2007, by Dr. Marshall. T. 240. At that time she was prescribed Metformin and advised to check her blood sugar three times a week with the hopes of keeping it under 140. Dr. Frisbee's physical examination in 2008 resulted in a finding of no limitations on Plaintiff's physical abilities. T. 198. Plaintiff provided one lab report and blood sugar logs from three weeks in February, 2009 that indicate frequent high levels of glucose. T. 280-292. On February 2, 2009, Plaintiff told Dr. Marshall that she stopped taking Metformin because it gave her diarrhea. T. 279. At that time Dr. Marshall noted no acute distress and placed no restrictions on Plaintiff's activities. *Id.* The ALJ made specific note of Plaintiff's fluctuation in blood sugar and the fatigue she attributed to diabetes, but there is simply no medical evidence that Plaintiff's diabetes (or accompanying fatigue) imposed any limitations on her ability to work. T. 74, 78.

The ALJ explained that Plaintiff is morbidly obese at 5'1" tall and 195 pounds. T. 74. He found that while her obesity might exacerbate her back pain and diabetes it did not cause an ability ambulate effectively. T. 76. Dr. Frisbee's examination showed no respiratory or circulatory problems attributable to her weight and detected full range of motion in her spine and all her joints. T. 196-197. There is no medical evidence that Plaintiff's obesity imposed any limitations on her ability to work. The Eighth Circuit has found that when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal. *Heino v. Astrue*, 579 F.3d 873, 881 (8th Cir. 2009); *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004).

Plaintiff has been treated for hypertension since 2001. Following a diagnosis of "uncontrolled essential hypertension" on August 17, 2004, Dr. Marshall worked with Plaintiff successfully to get her blood pressure under control. T. 243, 244. On February 5, 2007, Plaintiff reported to Dr. Marshall that

she had been "feeling well." T. 241. On November 2, 2007, Plaintiff reported to Dr. Marshall that she was "doing well." T. 240. On February 2, 2009, Dr. Marshall noted that Plaintiff's hypertension was under good control. T. 279. The Eighth Circuit has held that an impairment that can be controlled by treatment or medication is not considered disabling. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). Plaintiff submitted no evidence that hypertension rendered her unable to work.

Plaintiff's medical records indicated that she has been taking medication for depression since at least 2002[2]. T. 193. Having no history of psychiatric treatment, Plaintiff underwent two mental consultative examinations[3]. Both Dr. Shry and Dr. Efird diagnosed Plaintiff with major depression and assigned GAF scores of 48-58 and 50-61, respectively[2]. T. 215, 253. A GAF of 41- to 50 indicates the individual has "[s]erious symptoms ... or any serious impairment in social, occupational, or school functioning...." DSM-IV at 32. A GAF of 51 to 60 indicates the individual has "[m]oderate symptoms ... or moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32. The ALJ considered both diagnoses as well as her testimony that she "do[esn't] handle stress" and that she gets nervous and cries when she is around people very long, her two complaints about her depression. T. 49-50, 75 - 76. The result is that the ALJ limited Plaintiff's RFC to occasional contact with the general public

---

[2] Plaintiff told Dr. Efird on May 1, 2008 that she was first prescribed psychiatric medication "about five years ago", but Plaintiff's medical records from Cooper Clinic indicate she was asking for refills of Celexa as far back as June 17, 2002. T. 193, 213.

[3] The court notes that Plaintiff accuses the Defendant of both "blatant doctor shopping" *and* failure to properly develop the evidence, but the Court views the fact that Plaintiff was sent for two consultative examinations to be evidence that the Administration and the ALJ went to great lengths to properly and adequately assess Plaintiff's conditions.

[2] The Global Assessment of Functioning (GAF) Scale is a numerical assessment between zero and 100 that reflects a mental health examiner's judgment of the individual's social, occupational, and psychological function. *Kluesner v. Astrue*, 607 F.3d 533, 535 (8th Cir. 2010). *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000).

and only low stress work. T. 77.

Plaintiff contends that the ALJ failed to consider evidence which fairly detracted from his findings. Pl.'s B. 8. She argues that the ALJ failed to consider her limitations brought about by fluctuations in blood sugar, pain, fatigue, obesity, blood pressure, decreased grip strength and "loss of pulse" in foot, side effects of medication, and anxiety. T. 8-10. As noted above, the ALJ did specifically consider many of these reported conditions. In her April 23, 2008, consultative exam, Dr. Frisbie recorded that Plaintiff had a 40% reduction in grip strength but found there to be no limitation in her ability to lift, carry, handle or finger objects. T. 197-198. Furthermore, Plaintiff never made any complaints about her ability to grip. In the course of the same physical examination, Dr. Frisbie assessed Plaintiff's circulatory system. She recorded Plaintiff's posterior tibia pulse[3] as 1+ (barely palpable). She left the space next to dorsalis pedis[3] blank, most likely indicating she did not attempt to measure Plaintiff's pulsation at this point. In 8 to 10 % of the population, the dorsalis pedis pulse cannot be detected. Morland's Illustrated Medical Dictionary 1493 (29th ed. 2000). Dr. Frisbie also did not record plaintiff's height, weight, or blood pressure in the indicated spaces; without notation from the doctor, one would not assume Plaintiff weighed 0 pounds or had no blood pressure from the mere absence of a recorded measurement. Plaintiff's argument that the ALJ did not consider the fact that she had no pulse in her lower extremities is without merit. It cannot be argued the ALJ did not properly consider favorable evidence or fail to explain his reasons for discounting that evidence. Substantial evidence in the record as a whole supports the ALJ's decision. Finally, Plaintiff points

---

[3] The pulse felt over the posterior tibial artery just posterior to the medial malleolus on the inner aspect of the ankle. Morland's Illustrated Medical Dictionary 1493 (29th ed. 2000).

[3] The pulse felt on the dorsum of the foot between the first and second metatarsal bones. *Id.*

9

to no medical evidence that any of these conditions imposed any limitations on her ability to work.

The ALJ fully summarized all of plaintiff's medical records and separately discussed each of plaintiff's alleged impairments. The Court finds that the ALJ properly considered the combined effects of Plaintiff's impairments. *Martise v. Astrue,* 641 F.3d 909. 924 (8th Cir. 2011); *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994).

> On June 3, 2008, Dr. Marshall provided the following statement:
>
> Please be advised that I have seen Linda Haasis in my office for treatment of Type II Diabetes, back pain, fatigue, thyroid problems, high blood pressure, and depression. Due to the combination of these impairments, in my professional opinion, he (sic) is unable to maintain an eight hour workday sitting, standing, and/or walking in combination. This would exclude a sit down job as well as any job allowing alternating sitting with standing or walking. Her concentration and attention would be significantly impaired by her pain and depression as well.

The ALJ considered this statement from a treating source and determined that Dr. Marshall's opinion was not supported by her own treatment notes and granted it little weight. T. 79. Although Plaintiff argues that Dr. Marshall's opinion should be given "controlling weight" because she was a treating physician, the ALJ's analysis was consistent with the Commissioner's regulations, which provide that a treating physician's opinion is given controlling weight if, and only if, it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence. 20 C.F.R. § 404.1527(d)(d); *Johnson v. Astrue*, 628 F.3d 991, 994 (8th Cir. 2011). The most important factors in evaluating medical reports are the status of the reporting physician and the quality of the report. Bloch on Social Security. §5:7 (May 2011). But when the treating physician's opinion consists of nothing more than conclusory statements, the opinion is not entitled to greater weight than any

other physician's opinion. *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991)(conclusory report that Plaintiff was "totally disabled" containing few explanations and composed almost entirely of conclusions not entitled to greater weight than the opinion of the other doctors in this case); *Ward v. Heckler*, 786 F.2d 844, 846 (8th Cir. 1986) Dr. Marshall provided no explanation as to how Plaintiff's high blood pressure, blood sugar levels, fatigue, thyroid problems, or back pain affected her abilities, other than to say that she was unable to maintain an eight hour work day. Dr. Marshall's opinion is of limited value due to its vagueness and the fact that her own treatment history of Plaintiff indicates that plaintiff's blood pressure was under control and she was feeling well. It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes. *Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010); *Davidson v. Astrue,* 578 F.3d 838, 844 (8th Cir. 2009). Dr. Marshall's treatment notes indicate normal findings and no acute distress upon physical examination at Plaintiff's August 17, 2004, April 15, 2005, February 5, 2007 (Plaintiff also reported she was feeling well), November 2, 2007 (Plaintiff was doing very well on her blood pressure medications, Plaintiff reported doing well), June 3, 2008 and February 2, 2009 (Plaintiff's hypertension was currently under good control), visits. T. 239, 240, 241, 243, 244, 279. Dr. Marshall's opinion is not only inconsistent with the other medical evaluations on record, but internally inconsistent with her own treatment records. Thus, Dr. Marshall's opinion deserves no greater deference than any other physician's opinion in the record. Finally, the ALJ is not required to adopt the opinion of a physician on the ultimate issue of a claimant's ability to engage in substantial gainful employment. *Qualls v. Apfel*, 158 F.3d 425, 428 (8th Cir. 1999). Even if granted substantial weight, the evidence as a whole does not support Dr. Marshall's opinion that Plaintiff is unable to work.

11

Plaintiff argues that the ALJ improperly substituted her own opinions about the medical evidence in establishing Plaintiff's RFC instead of relying on medical evaluations. The Court disagrees, for there was substantial evidence in the record to support the ALJ's conclusion that Plaintiff was not disabled. The ALJ is responsible for determining a claimant's RFC, a determination that must be based on medical evidence that addresses the claimant's ability to function in the workplace. *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004). In this case, there was substantial evidence in the record upon which the ALJ could make an informed decision. There records from Plaintiff's treating physician covering a multi-year period of time. There were results of medical tests and procedures. There were disability and function reports completed by the Plaintiff. There were reports from three consultative examinations. There was the transcript of a hearing at which Plaintiff was questioned by her experienced attorney and an Administrative Law Judge. The ALJ is permitted to issue a decision without obtaining additional evidence as long as the record is sufficient to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

Absent unfairness or prejudice, which Plaintiff has not demonstrated, remand is not appropriate. *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995). A fair reading of the ALJ's decision supports a conclusion that the record was properly developed and that she properly considered all the evidence in reaching her decision of Plaintiff's residual functional capacity.

**The ALJ Properly Considered Plaintiff's Credibility**

Social Security Ruling 96-7p clarifies the two-step process by which the ALJ must evaluate symptoms, including pain, to determine their limiting effects on a claimant. See, also 20 C.F.R. §§ 404.1529 and 416.929. First, the ALJ must establish whether the claimant's medically determinable

12

medical and psychological conditions could reasonably be expected to produce the claimant's symptoms. SSR 96-7p. Once the ALJ finds that the conditions could be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent the claimant from performing basic work activities. *Id*. Whenever the intensity, persistence or severity of the symptoms cannot be established by objective medical evidence, the ALJ must assess the credibility of any statements made by the claimant to support the alleged disabling effects. The Ruling sets forth the factors that the ALJ must consider in assessing the claimant's credibility, emphasizing the importance of explaining the reasons supporting the credibility determination. The Ruling further directs that the credibility determination must be based on a consideration of all of the evidence in the case record. *Id*.

As part of the determination of RFC, after reviewing the medical records, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. T. 84-85. An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1332 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See Id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004).

13

However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* The issue is not whether Plaintiff suffers from any pain, but whether her pain is so disabling as to prevent the performance of any type of work. *McGinnis v. Chater*, 74 F.3d 873, 874 (8th Cir. 1996). In *Polaski,* the Eighth Circuit set forth the following pain standard:

> The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints.
> 739 F.2d at 1322.

Questions of credibility are the province of the ALJ as trier of fact in the first instance. *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995). The ALJ need not discuss every *Polaski* factor if he discredits Plaintiff's credibility and gives good reason for doing so. If the ALJ gives good reasons for finding Plaintiff not credible, then the court should defer to his judgment when every factor is not explicitly discussed. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

Throughout his opinion and within his credibility assessment, the ALJ addressed several of the *Polaski* factors and pointed out inconsistencies between Plaintiff's testimony and the record:

Plaintiff reported dressing and grooming herself, cooking meals, washing dishes, and sweeping floors. T. 51. She testified there were no household chores she could not do and that she drives. T. 56, 57. She told Dr. Efird that she could perform her activities of daily living satisfactorily, although she becomes tired. T. 213. Acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking are inconsistent with subjective complaints of disabling pain. *Medhaug v. Astrue*, 578

14

F.3d 805, 817 (8th Cir. 2009). "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).

Plaintiff's high blood pressure is under control and her antidepressants are helping. T. 48, 75, 279. Her hypothyroidism is well-controlled with Synthroid. T. 75. She was diagnosed with muscle strain in June 2008 and prescribed a muscle relaxant. Subsequent to that she had no other treatment for her back and has not been diagnosed with any back problem which would cause the limitations she reported. T. 78. Failure to seek regular or sustained medical treatment is inconsistent with allegations of severe pain. *Novotny v. Chater*, 72 F.3d 669, 670 (8th Cir. 1995). The only side effect of her medications is drowsiness. T. 48.

Many of plaintiff's complaints are inconsistent with her residual functional capacity assessment. She testified that her high blood pressure was exacerbated by stress and being around people, but Dr. Marshall noted it was under control at her most recent visit and Plaintiff herself testified her medicine controls her blood pressure. T. 53, 279. Plaintiff described being socially isolated, but she lives with her sister and her two children, speaks on the telephone daily and has frequent visitors. T. 55, 146, 215. Dr. Frisbie's physical examination found no limitations in Plaintiff's ability to walk, stand, sit, lift, carry, handle, finger, see, hear, or speak. T. 198.

The Court finds that the ALJ adequately, if not expressly, applied the *Polaski* factors and discounted Plaintiff's subjective complaints of pain. *See Schultz* 479 F.3d at 983 (concluding that ALJ properly considered the *Polaski* factors even though the ALJ did not cite to *Polaski* directly). Accordingly, the ALJ did not err in discounting Plaintiff's subjective complaints of pain. The ALJ's findings are supported by substantial evidence on the record as a whole.

**<u>The ALJ Properly Relied On Vocational Expert Testimony</u>**.

The ALJ found that Plaintiff was not disabled because she was able to perform other work. He based his determination largely on the testimony of the VE. T. 80. Ordinarily, the Commissioner can rely on the testimony of a VE to satisfy its burden of showing that the claimant can perform other work. *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008); *Porch v. Chater*, 115 F.3d 567, 571 (8th cir. 1997); *see also Guilliams v. Barnhart*, 393 F.3d 798, 804)(8th Cir. 2005)(stating that "[t]he commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers".)

Jim Spraggins, a Vocational Expert, appeared and testified at the administrative hearing. T. 58 - 63. He identified Plaintiff's prior relevant work as a home health care worker, which is classified as medium, semi-skilled work. T. 60. The ALJ posed a hypothetical question asking Mr. Spraggins what jobs would be available for a person of the same age, education and work experiences as the Plaintiff, and provided the following physical and mental limitations:

> Please assume an individual born on April 10, 1958, with a limited education who could carry twenty pounds occasionally and ten pounds frequently. The individual can sit for about six hours in an eight hour work day and can stand/walk for six hours in an eight hour work day, individual can understand, remember, and carry out simple routine or repetitive tasks, individual can respond appropriately to supervision, coworkers, and usual work settings, individual can have only occasional contact with general public.

Mr. Spraggins indicated that such a person would be able to perform light duty unskilled work. T. 61. He identified three jobs which exist in significant numbers in Arkansas: poultry production line worker, production line assembler, and sewing machine operator. T. 61.

The hypothetical question posed by the ALJ in this case incorporated each of the physical and

16

mental impairments that the ALJ found to be credible, as explained *supra*, and excluded those impairments that were discredited or that were not supported by the evidence presented. Accordingly, the ALJ's determination that Plaintiff could still perform work that exists in significant numbers in the national economy is supported by substantial evidence.

**The ALJ Properly Developed the Record**.

Plaintiff argues that the ALJ should have re-contacted Dr. Marshall to clarify the discrepancies between her June 3, 2008, note that Plaintiff was unable to work and her treatment records indicating Plaintiff was generally well. Pl.'s Br. at 6. Plaintiff claims that there are unresolved discrepancies in Dr. Frisbie's consultative examination report and that the ALJ failed to develop crucial issues. *Id*. 7.

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). In developing the record, the Commissioner is required to obtain additional medical examinations and/or testing only if the record does not provide sufficient medical evidence to determine whether the claimant is disabled. See *Barrett v. Shalala*, 38 F.3d 1019 (8th Cir. 1994)(citing, in part, 20 C.F.R. 404.1519a(b)). *See also Dozier v. Heckler*, 754 F.2d 274(8th Cir. 1985)(reversible error not to order consultative examination when such

evaluation is necessary to make informed decision). 20 C.F.R. 404.1519 a(b) identifies several instances in which additional medical examinations an/or testing is warranted. They include the following: (1) where the additional evidence needed is not contained in the records of the claimant's medical sources; or (2) where a conflict, inconsistency, ambiguity, or insufficiency in the evidence must be resolved and the Commissioner is unable to do so by re-contacting the medical sources.

Plaintiff attempts to make an issue out of the fact that Dr. Frisbee's April 23, 2008, consultative physical exam report was electronically signed by Marie Pham, Advanced Practical Nurse, and stamped with the signature of the doctor. Pl.'s Br. at 7. The innuendo that the report was created by a nurse and "rubber stamped" by the doctor is poorly taken. The Plaintiff presented no evidence that Dr. Frisbie did not perform the examination and write and/or review the report herself. Similarly Plaintiff calls into question Dr. Frisbie's finding of reduced grip strength and "absent pulses in the lower extremities," insisting these are discrepancies requiring further inquiry by the ALJ. Pl.'s Br. at 10. As noted earlier, the pulsation record is not a discrepancy and even if it were, the Plaintiff has not presented any evidence that these conditions prevent her from working. The ALJ was not required to re-contact Dr. Frisbie.

The ALJ found, as discussed above, that Dr. Marshall's opinion was inconsistent with other medical evidence as well as internally inconsistent. Neither the consulting physician's report nor Plaintiff's own testimony adequately supported the treating physician's disability determination. A lack of medical evidence to support a doctor's opinion does not equate to underdevelopment of the record as to a claimant's disability. *Martise v. Astrue*, 641 F.3d 909, 929 (8th Cir. 2011). In this case, the issue was not whether the treating physician's opinion was somehow incomplete, rather the ALJ found Dr. Marshall's opinion refuted by the record and her own earlier opinions and advice. *See Hacker v. Barnhart*, 459

F.3d 934 (8th Cir. 2006). The ALJ does not have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped. *Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ did not find that there were any undeveloped issues, only that there was no evidence to support Dr. Marshall's opinion. Once an ALJ concludes, based on sufficient evidence, that the treating doctor's opinion is "inherently contradictory or unreliable", he is not generally required to seek more information from that doctor. *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 200); *Hacker v. Barnhar*, 459 F.3d 934, 938 (8th Cir. 2006). The ALJ was not required to re-contact Dr. Marshall.

## V.  Conclusion

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determination at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

Entered this 27th day of July, 2011.

/s/ J. Marschewski

HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE